UNITED STATES of America,
Plaintiff–Appellee,

v.

Victor Manuel MARQUEZ–ACOSTA,
Defendant–Appellant.

No. 02–10035.
D.C. No. CR–01–00196–FRZ.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 8, 2002.

Decided Nov. 20, 2002.

Before B. FLETCHER, R. ARNOLD,* and RAWLINSON, Circuit Judges.

## MEMORANDUM **

Victor Manuel Marquez–Acosta was convicted of re-entering the United States after a deportation, in violation of 8 U.S.C. § 1326(a), and sentenced to 46 months in prison, to be followed by three years of supervised release. On appeal, he claims that his earlier deportation, in 1994, was invalid. This deportation was based on Mr. Marquez–Acosta's commission of a crime of moral turpitude within five years of entry into this country. In fact, he says, his crime was committed more than five years after entry, and he was not given an appropriate opportunity to assert this contention in the deportation proceeding. Accordingly, it is argued, he should be allowed to attack the deportation order collaterally, that order should be set aside as in violation of due process, and his present conviction, which is predicated on the deportation, should be reversed. We hold that the deportation order was not invalid, and accordingly affirm the conviction under review.

After the deportation order was entered in 1994, Mr. Marquez–Acosta filed an appeal to the Board of Immigration Appeals. He later withdrew his own appeal, signing a document that stated in English and Spanish:

> I, Victor Marquez–Acosta, Filed an appeal from the decision of the Immigration Judge. I do not wish to pursue that appeal any longer, and hearby [sic] withdraw the appeal. I understand that the decision of the Immigration Judge thereby becomes final.

In accordance with this expressed wish, the appeal was dismissed, and the deportation order did become final.

■ Normally, a failure to exhaust appellate remedies (by means of which the person concerned could make whatever arguments he wished against the validity of a deportation order) would bar any collateral attack on a deportation. Mr. Marquez–Acosta first contends that this rule should not apply to him because his withdrawal from the appeal of his deportation order was not voluntary. We disagree. There is no reason whatever to suppose that Mr. Marquez–Acosta acted against his own will. The withdrawal of appeal was signed by him, it was written both in English and in Spanish, and the document itself clearly stated that the effect of the withdrawal would be to make the deportation order final. The Immigration Judge had previously explained to Mr. Marquez–Acosta his appeal rights. He was of age and *sui juris* when he signed the withdrawal.

■ Mr. Marquez–Acosta contends additionally that the deportation order was invalid, and the withdrawal of his appeal ineffective, because the Immigration Judge never adequately explained to him potential infirmities in the deportation proceeding. Immigration judges have a duty, in general, to explore the record and explain the legal situation to persons being proceeded against. Here, the validity of the deportation order, substantively, depended upon the time elapsed between Mr. Marquez–Acosta's entry into this country and his commission of a crime of moral turpitude. If the time was greater than five years, the deportation order was in error.

---

* The Honorable Richard S. Arnold, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Mr. Marquez–Acosta's principal argument is that in 1988 he received lawful-temporary-resident status under the Special Agricultural Workers (SAW) program, see § 210 of the Immigration and Nationality Act, 8 U.S.C. § 1160. This status, it is argued, necessarily required a finding that Mr. Marquez–Acosta resided in the United States at a time pre-dating the five-year period ending on the day of his commission of the crime involving moral turpitude (burglary). The Immigration Judge, the argument runs, should have noticed this inconsistency between the requested deportation and Mr. Marquez–Acosta's SAW status, and should have explored the issue at the deportation hearing, or, at the least, should have advised Mr. Marquez–Acosta that he had a potential basis for appeal. The Judge's failure to take either of these actions, it is urged, meant that the deportation order deprived Mr. Marquez–Acosta of his liberty without due process of law, and was therefore invalid.

We respectfully disagree with this contention. The fact (if it is a fact) that SAW status and the 1994 deportation order are mutually inconsistent does not necessarily mean that the deportation order was erroneous. Additionally, SAW status did not require that defendant had been continuously present within the United States for any particular period of time. It required only that he had performed qualifying farm work for at least 90 working days in the aggregate in each of the twelve-month periods ending on May 1, 1984, 1985, and 1986, and had resided in this country for six months in the aggregate in each of those twelve-month periods. Immigration and Nationality Act § 210(a)(2)(A), 8 U.S.C. § 1160(a)(2)(A); 8 C.F.R. § 210.1(g). Thus, it is possible that Mr. Marquez–Acosta was legally entitled to SAW status, but yet last entered the United States within five years of his commission of burglary. Indeed, the record suggests rather strongly that Mr. Marquez–Acosta was out of this country, in Mexico, for much of the time between 1985 and 1987.

In addition, at his deportation hearing the defendant acknowledged his entry date into the United States as November 1988. We see no reason why the Immigration Judge was not entitled to rely on this statement by the defendant himself. An entry in November of 1988 places the crime within the five-year period. And finally, defendant has not shown, nor does he now offer to show, that he was continuously or nearly continuously present in this country between 1985 and 1988, so as to have affected the outcome of his deportation proceedings.

The judgment is

AFFIRMED.